**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000484
19-JUL-2013
08:49 AM**

NO. CAAP-12-0000484

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


SUSANNE M. LUNSFORD, Individually
and as Personal Representative of the
Estate of BRIAN F. MCVEY, Deceased,
Plaintiffs-Appellants,
v.
SURGICAL ASSOCIATES, INC.;
FONG-LIANG FAN, M.D.; JOSE A. GANEL, M.D.,
Defendants-Appellees,
and
DOES 1-100, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-2310)

MEMORANDUM OPINION
(By: Foley, Presiding J., Leonard and Reifurth, JJ.)

In an appeal arising out of alleged negligence in obtaining informed consent, Plaintiffs-Appellants Susanne M. Lunsford (Lunsford) and Brian F. McVey (McVey) (collectively, Plaintiffs) appeal from the February 1, 2012 judgment and the April 12, 2012 "Order Denying Plaintiffs' Motion For Judgment As A Matter Of Law Notwithstanding The Verdict And For New Trial On Damages (Filed February 13, 2012)" entered in the Circuit Court of the First Circuit[1] (circuit court). The judgment followed a jury verdict in favor of Defendants-Appellees Surgical

---

[1] The Honorable Edwin C. Nacino presided.

Associates, Inc., Fong-Liang Fan, M.D. (Dr. Fan), and Jose A. Ganel, M.D. (Dr. Ganel) (collectively, Defendants).

## I. BACKGROUND

McVey was born in 1973 and was diagnosed with type 1, insulin-dependent diabetes when he was nine years old. McVey's kidneys failed in 1996, after which he required dialysis sessions three times a week. As a dialysis patient, McVey needed continued vascular access through which dialysis therapy could be delivered.

Three primary methods are used to gain access to a patient's circulation: an intravenous catheter, an arteriovenous (AV) graft, or an AV fistula. In 1997, Dr. Fan placed the first access site, an AV graft on McVey's left forearm. From then until June 2007, with Dr. Fan as his vascular surgeon, McVey underwent over forty surgical procedures to gain or maintain access sites for dialysis. McVey received additional AV grafts as well as AV fistulas and catheters.

On March 1, 2007, McVey felt a blister on the AV graft on his left leg, which at the time was being used as a permanent access site. On March 13, 2007 McVey visited Dr. Fan, who informed McVey that the poking of dialysis needles had caused a pseudoaneurysm at the graft site. Dr. Fan recommended McVey undergo surgery to treat the pseudoaneurysm. McVey agreed and received surgery on March 16, 2007.

A few days later, McVey's nephrologist, Dr. Ganel, informed McVey the left leg AV graft site was failing. McVey's mother, Lunsford, called Dr. Fan, and Dr. Fan informed her that despite the repair to the pseudoaneurysm, the site could fail at any time. Dr. Fan then recommended placing an access site on McVey's right leg so that McVey would have a site available when the left site failed. Dr. Fan did not mention any other options or alternatives to Lunsford or McVey. McVey signed a form consenting to the surgery, and on March 21, 2007, Dr. Fan placed

2

an AV graft in McVey's right leg. This procedure became the subject of this appeal.

On May 22, 2007, McVey was admitted to the emergency room with a fever and with bleeding from the AV graft on his left leg. Dr. Fan conducted ligation surgery on the site that day, tying a suture around the AV graft. McVey then moved to Texas in June 2007, where he continued receiving treatment and underwent further surgical procedures.

On October 5, 2009, Plaintiffs filed a complaint in the circuit court alleging in relevant part that Defendants had been negligent in obtaining informed consent from McVey for the March 21, 2007 surgery. Lunsford also raised derivative claims of loss of consortium and negligent infliction of emotional distress.

On November 16, 2011, following trial, the jury returned a verdict in Defendants' favor, determining in relevant part that Dr. Fan did not breach his duty to obtain informed consent from McVey. Consequently, the jury did not reach the questions regarding Plaintiffs' damages and Lunsford's derivative claims. On February 1, 2012, the circuit court entered a judgment in Defendants' favor as to all claims in Plaintiffs' complaint.

Plaintiffs filed a "Motion For Judgment As A Matter Of Law Notwithstanding The Verdict And For New Trial On Damages" (Motion For JMOL And New Trial) on February 13, 2012. Plaintiffs argued they were entitled to judgment as a matter of law on the issue of whether Dr. Fan breached his duty to obtain informed consent, and they requested a new trial to determine causation and damages. The circuit court denied Plaintiffs' motion on April 12, 2012, and Plaintiffs filed a timely notice of appeal on May 11, 2012.

On appeal, Plaintiffs contend the circuit court erroneously (1) denied their Motion For JMOL And New Trial,

3

(2) excluded evidence of Lunsford's damages consisting of lost income, and (3) awarded costs to Defendants.

## II.   STANDARD OF REVIEW

> It is well settled that a trial court's rulings on motions for judgment as a matter of law are reviewed *de novo*.
>
> When we review the granting of a [motion for judgment as a matter of law], we apply the same standard as the trial court.
>
> A [motion for judgment as a matter of law] may be granted only when after disregarding conflicting evidence, giving to the non-moving party's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in the non-moving party's favor, it can be said that there is no evidence to support a jury verdict in his or her favor.

*Miyamoto v. Lum*, 104 Hawai'i 1, 6-7, 84 P.3d 509, 514-515 (2004) (internal citations omitted).

Aluminum Shake Roofing, Inc. v. Hirayasu, 110 Hawai'i 248, 251, 131 P.3d 1230, 1233 (2006).

## III.   DISCUSSION

Hawaii Revised Statutes (HRS) § 671-3 (Supp. 2007) ("Informed consent") states, in pertinent part:

> (b) The following information shall be supplied to the patient or the patient's guardian or legal surrogate prior to obtaining consent to a proposed medical or surgical treatment or a diagnostic or therapeutic procedure:
>
> . . .
>
> (4) The recognized alternative treatments or procedures, including the option of not providing these treatments or procedures[.]

It is undisputed that Dr. Fan did not disclose any alternatives to McVey or Lunsford before obtaining McVey's consent to the March 21, 2007 surgical implantation of the AV graft on McVey's right leg. Plaintiffs therefore assert they are entitled to judgment as a matter of law on the issue of whether Dr. Fan breached his duty to obtain informed consent under HRS § 671-3(b)(4).

4

Our courts have adopted the patient-oriented standard for determining whether particular information must be disclosed to a patient. Ray v. Kapiolani Med. Specialists, 125 Hawai'i 253, 267, 259 P.3d 569, 583 (2011). Under the patient-oriented standard, the scope of a physician's duty of disclosure is measured by what a reasonable patient would need to know in order to make an informed and intelligent decision regarding proposed medical treatment. Id. at 267, 259 P.3d at 583. What constitutes material information about a patient's treatment is a question of fact dependant on the particular circumstances of each informed consent case. Ditto v. McCurdy, 86 Hawai'i 93, 111 n.17, 947 P.2d 961, 979 n.17 (App. 1997), rev'd and vacated on other grounds, 86 Hawai'i 84, 947 P.2d 952 (1997); see also Barcai v. Betwee, 98 Hawai'i 470, 486, 50 P.3d 946, 962 (2002) (question of whether physician owed duty to disclose risk of developing side effects from medication was for the jury).

Here, substantial evidence supported the jury's verdict that Dr. Fan did not breach his duty to obtain informed consent. Although Plaintiffs offered testimony regarding several alternatives to the AV graft procedure, Defendants presented evidence that those alternatives were unreasonable or infeasible, given McVey's condition. "Verdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the jury's findings." Ray, 125 Hawai'i at 262, 259 P.3d at 578 (brackets omitted).

At trial, Plaintiffs offered evidence of the following alternatives to the March 21, 2007 surgery: (1) waiting and watching to see how McVey's left leg access site performed, while continuing to use that access site; (2) using a temporary catheter if his left leg access site failed; (3) creating a necklace graft; (4) using preoperative mapping to determine if other sites were available; (5) creating an access site on

5

McVey's arm; and (6) doing exploratory surgery on McVey's right arm to determine its accessibility.

Defendants countered with expert testimony from a vascular surgeon who testified that, given McVey's complicated history and condition, each of the above alternatives was unreasonable. First, the expert disagreed that waiting was a reasonable option. Both parties' witnesses agreed that failure of an access site is unpredictable, and a newly placed access site takes three to six weeks to heal before it can be used for dialysis. Defendants' expert stated that because Dr. Fan believed McVey's existing access site could fail soon, Dr. Fan acted appropriately by creating a new access site that would be ready when the left leg site failed, as it did on May 22, 2007. Second, the expert testified that creating an access site was always preferable to using temporary catheters because catheters damage the veins and can be subject to infection. Dr. Fan also testified that McVey had asked to avoid catheter usage because he found catheters uncomfortable. Third, Defendants' expert stated placing leg grafts was always preferred over placing necklace grafts. Fourth, the expert testified that preoperative mapping procedures would be of limited benefit to McVey and that certain procedures would have been life-threatening because of McVey's allergies. Finally, the expert stated creating an access site on McVey's arm was not reasonable because McVey had obstructed veins in his arms, which Dr. Fan was aware of. Defendants' expert concluded that under McVey's circumstances, there were no other reasonable alternatives available to Dr. Fan other than performing the March 21, 2007 procedure.

The jury "weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts[,]" Stallworth v. Boren, 99 Hawai'i 287, 307, 54 P.3d 923, 943 (App. 2002) (internal quotation marks omitted), and we

6

conclude there was substantial evidence to support the jury's verdict that Dr. Fan did not breach his duty to obtain informed consent from McVey.  Therefore, the circuit court properly denied Plaintiffs' Motion For JMOL And New Trial, and Plaintiffs' remaining points of error are moot.

## IV.  CONCLUSION

We affirm the February 1, 2012 Judgment and the April 12, 2012 "Order Denying Plaintiffs' Motion For Judgment As A Matter Of Law Notwithstanding The Verdict And For New Trial On Damages (Filed February 13, 2012)" entered in the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawai'i, July 19, 2013.

On the briefs:

Dennis W. King
William J. Deeley
Aaron Loeser
(Deeley King Pang & Van Etten)
for Plaintiffs-Appellants.

Arthur F. Roeca
April Luria
Jodie D. Roeca
(Roeca Luria Hiraoka)
for Defendants-Appellees.

Presiding Judge

Associate Judge

Associate Judge

7